J-A07027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1212 MDA 2020 |

Appeal from the Decree Entered August 14, 2020
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87174,
CP-06-DP-0000147-2019

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 14, 2021**

R.F. ("Mother") appeals from the decree involuntarily terminating her parental rights to her Child, I.F. who was born in July, 2019.[1, 2]  Because the record supports the decision of the Orphans' Court, we affirm the Decree.

We glean the following summary of the relevant facts from the certified record.  In March, 2015, Berks County Children and Youth Services ("Agency") became involved with Mother and her other children as a result of Mother's lack of supervision, inappropriate physical discipline, unstable mental health,

---

[*] Former Justice specially assigned to the Superior Court.

[1] In a separate Decree, the court involuntarily terminated the parental rights of Child's father, M.A. ("Father"), and any unknown father.  Neither Father nor any other unknown father is a party in this appeal.

[2] The orphans' court also changed Child's permanency goal to adoption. Neither Mother nor Father has appealed the change of goal.

inability to protect the children from domestic violence, and an inability to maintain safe and clean housing. Most relevant to this appeal, Mother was unable to protect her other children from the harm that her abusive relationship with their father caused them. Although Mother worked with a mental health counselor to address her mental health and domestic violence issues, Mother could not avoid abusive relationships.

In 2018, Mother became pregnant with Child. The father of Child is not the father of the other children ("Father"). Mother and Father also had an abusive relationship. Mother did not disclose the abusive relationship or her pregnancy to her mental health counselor. Also, Mother did not obtain pre-natal care until one month before Child's birth. When Mother gave birth to Child in July of 2019, the Agency filed for and the trial court granted emergency custody of Child to the Agency.

On July 31, 2019, the trial court adjudicated the Child dependent and granted custody to the Agency. On August 20, 2019, the court involuntarily terminated Mother's parental rights of Mother's oldest child. As a result of terminating Mother's parental rights for her oldest child, the trial court, on December 3, 2019, found aggravated circumstances against Mother, but still ordered the Agency to provide services to Mother.[3]

On March 9, 2020, the Agency filed Petitions for the Involuntary Termination of Parental Rights of Mother, Father, or anyone else claiming

---

[3] The Orphans' Court terminated the parental rights of Mother's two other children in January 2020.

paternity of Child. The Agency also filed a Petition to Change the Child's Goal to Adoption.

On August 10, 2020, the Orphans' Court held the evidentiary hearing on the petitions. Mother was present with her counsel, as well as Child's Guardian *ad Litem*/Counsel for Child. Father failed to appear, but his counsel was present.

The Agency presented testimony from Nicola Stidham, an expert in mental health and domestic violence treatment who counseled Mother for three years. In addition, Lisa Mohler, a caseworker for Partners in Parenting, who, *inter alia*, supervised Mother's visits with Child, testified. Mother testified and presented testimony from Taylor Spinella, her former mental health therapist.

On August 14, 2020, the Orphan's Court entered a decree involuntarily terminating Mother's parental rights to Child. Mother timely appealed and complied with Pa.R.A.P. 1925. On November 9, 2020, the Orphans' Court filed its Rule 1925(a) Opinion.

**ISSUE ON APPEAL**

Mother raises the following issues for our review:

1. Whether the Trial Court erred in determining that the parental rights of Appellant/Mother, [R.F.,] are forever terminated insofar as[:]

   a. Under 23 Pa. C.S.A. Section 2511(a)(1) the Mother's consistent compliance with her visitation schedule with the child evidenced to the Court a settled purpose of maintaining an ongoing relationship with the child.

b. Under 23 Pa. C.S.A. Section 2511(a)(2) the conditions which led to the placement of the child were in fact being addressed by the Mother through her successful and ongoing therapy, and as such, no evidence existed that the Mother could not, or would not, remedy these conditions.

c. Under 23 Pa. C.S.A. Section 2511(a)(5) there was no evidence submitted that the conditions which led to the removal of the child could not, or would not, be remedied within a reasonable amount of time, insofar as Mother submitted documentation that clearly illustrated her consistent compliance and dedication to therapy, further evidencing a commitment to recovery.

d. Whether the Trial Court erred in finding that under 23 Pa. C.S.A. Section 2511(a)(8), termination of parental rights would best serve the needs of the child, insofar as Mother had voluntarily enrolled in, and actively participated in, a therapy program, consistently visited with the children, and evidenced a commitment to recovery, all of which were objectives of her Single Case Plan, in the hope of being reunified with her child.

Mother's Brief, at 7.

**LEGAL ANALYSIS**

In reviewing cases in which the Orphans' Court involuntarily terminated parental rights, appellate courts must accept the findings of fact and credibility determinations of the Orphans' Court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the Orphans' Court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the Orphans' Court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

- 4 -

The Orphans' Court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted). Appellate courts defer to the Orphans' Court that often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time ... in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the Orphans' Court to conduct a bifurcated analysis. *See* 23 Pa.C.S. § 2511(a) and (b). The Orphans' Court first focuses on the conduct of the parent, and, if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), then the Orphans' Court will analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child. The Orphans' Court should particularly focus on the existence of the child's bond with the parent, if any, and the potential effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super.

2007). A parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his parental duties, to the child's right to have proper parenting and fulfillment of the child's potential in a permanent, healthy, safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

While the Orphan's Court here found that the Agency met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), we need only agree with its decision as to any one subsection of Section 2511(a). If we also find that the trial court's factual findings support the requirements set forth in Section 2511(b), we will affirm the trial court's decision to involuntarily terminate the parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(2)**

We conclude that the Orphans' Court properly exercised its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(2). Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012) (citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *Id.* At a termination hearing, the Orphans' Court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during dependency proceedings. *Id.* at 340.

In this case, the Orphans' Court terminated Mother's parental rights because of "Mother's inability to recognize how her relationships can put her child at risk.' Orphans' Court Op., 11/9/20, at 3. The Orphans' Court found that Mother is unable "to demonstrate proper judgment regarding the people she associates with." *Id.* The Orphans' Court also observed that "Mother has continued to let people into her life who have been acknowledged by the agency as a risk to her child." *Id.* The Orphan's Court concluded that this lack of judgment puts the Child's safety "at risk" and demonstrates Mother's inability "to protect the [C]hild and provide [C]hild with a safe environment." *Id.*

Additionally, the Orphans' Court found that Mother has "not made progress in domestic violence counseling." *Id.* In particular, Mother has made minimal progress in addressing "her inability to apply what she has learned in

- 7 -

treatment to her personal life." *Id.* Thus, Orphans' Court concluded that the Agency met the requirements of Section 2511(a)(2).[4]

The record supports these findings. Ms. Stidham treated Mother individually and in group sessions from 2017 until March 2020. Ms. Stidham testified that Mother made minimal progress in incorporating what she learned regarding domestic violence and her "instant involvement with unhealthy and violent men." *See* N.T., 8/10/20, at 15-19, 24. *Id.* Ms. Stidham concluded that, throughout treatment, Mother was "entrenched in denial" and unable to be honest regarding her personal life. As a result of Mother's inability to recognize the harm that her boyfriends caused her and her children, Mother was discharged from treatment. *Id*. at 20-25. Ms. Stidham noted that even after learning of Father's troubled background, Mother continued to associate with him. *Id.* at 18-20.

Further, Ms. Stidham concluded that Mother had little understanding that she was harming her other children when they witnessed the violence between Mother and their father. *Id*. at 31. Ms. Stidham also concluded that returning Child to Mother would place Child at risk because Mother cannot protect a young child from the harm caused by witnessing domestic violence. *Id.* at 20-21.

---

[4] Although Mother does not contest the conclusion of Orphans' Court that the Agency established that it was in the best interest of Child to terminate Mother's parental rights pursuant to Section 2511(b), the record supports the Orphans' Court findings. Ms. Stidham testified that Child is bonded to his foster parents, cries throughout the visit with Mother, and willingly leaves Mother at the end of the visit to return to his foster family. N.T. at 75, 92, 95.

Ms. Stidham does not believe that Mother would make any progress if she were to continue with this treatment because "she has very, very entrenched belief systems regarding domestic violence perpetrators [and] her relationships[.]" *Id*. at 21.

Ms. Mohler also confirmed that Mother has made minimal progress in recognizing the harm that her abusive relationships cause her children. (N.T. 87). Ms. Mohler testified that Mother was deceitful about her relationships with the fathers of her children and that Mother was not learning about the consequences of her choice to continue to associate with these men. *Id.* Ms. Mohler further testified that although Mother repeatedly claimed that she was not in a relationship with Father, when Ms. Mohler went to Mother's new home on July 24, 2020, Mother was not home and she observed a man cooking food inside who resembled Father in build. When Ms. Mohler knocked on the door, the man stepped out of Ms. Mohler's sightline and would not answer the door. *Id.* at 80-81. Ms. Mohler returned a week later at 8:30 A.M. and observed Mother's car in the driveway and Father in the alleyway. *Id.*

The four issues that Mother raises on appeal are based on Mother's contention that there was insufficient evidence to support termination of her parental rights pursuant to Section 2511(a)(2) because she changed her behaviors, complied with ongoing therapy, and consistently did whatever was necessary to have Child returned to her. Mother's Brief, at 9-10, 12-13. Mother relies on Ms. Stidham's testimony that Mother was able verbalize the information she learned through three years of treatment and Ms. Spinella's

testimony that Mother had made good progress in her mental health treatment. *Id.* at 9-10. Further, Mother argues that at the time of the hearing, she owned her own home, was employed, was consistent in visiting Child, and there was no evidence that she tested positive for drugs since the case opened. *Id.* 9-10, 12-13. Mother asserts that she had maintained her bond with Child and that her love for Child was evident. *Id.* at 12-13. Mother concludes that she was addressing the conditions which led to the placement of Child through her successful and ongoing therapy and no evidence existed that she could not, or would not, remedy these conditions. *Id.* at 13.

Mother, however, is merely raising weight of evidence arguments. The Orphans' Court found the evidence that Mother relies upon not to be persuasive. Rather, as discussed *supra,* the Orphans' Court found persuasive the evidence that demonstrates that Mother lacks the capacity to recognize the harm that she causes to her children by exposing them to abusive relationships and, consequently, the ability to avoid such relationships. The court also relied upon the testimony that Mother will not develop this ability in the near future. Since we will not and cannot re-weigh the evidence, we find Mother's arguments meritless. **In re T.S.M.**, *supra.*

Having found no error of law or abuse of discretion, pursuant to our standard of review, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/14/2021</u>